IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JACKSON DOVE**,<br><br>             Plaintiff,<br><br>       v.<br><br>**STATE OF OREGON**, **LINDA BONO**, **KAREN HARRIS**, **MICHAEL SEALE**, **WARREN ROBERTS**, and **AIMEE HUGHES**,<br><br>             Defendants. | Case No. 3:25-cv-2049-SI<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

　　　Plaintiff Jackson Dove, an adult in custody at the Oregon State Penitentiary ("OSP"), has sued Defendants State of Oregon and several of its current and former healthcare workers under 42 U.S.C. § 1983. Dove, who suffers from ulcerative colitis, alleges that Linda Bono, Karen Harris, and Warren Roberts each violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to his serious medical needs while in state custody. Specifically, Dove alleges that these Defendants' failure to get him appropriate medicine led to his needing a total colectomy, and their refusal to reverse that colectomy has caused him additional suffering. He also asserts claims against Michael Seale and Aimee

PAGE 1 – ORDER

Hughes, two healthcare workers at OSP, seeking mandatory injunctive relief that they reverse his colectomy.

Now before the Court are Defendant Bono's motion to dismiss, ECF 4, Defendant Roberts' motion to dismiss, ECF 5, and Defendants Harris, Seale and Hughes' motion to dismiss, ECF 11. For the reasons explained below, the Court grants the motions.

## STANDARDS[1]

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

---

[1] Notwithstanding the Defendants' requests for oral argument, the Court does not believe that oral argument would assist in resolving the pending motion. *See* LR 7-1(d)(1).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND[2]

Dove suffers from ulcerative colitis. ECF 1-1 (First Amended Complaint or "FAC") ¶ 3. In April 2022, he was booked into Multnomah County Inverness Jail ("Jail"). *Id.* ¶ 4. As an inmate, Dove saw a gastroenterologist ("GI") doctor at Oregon Health Sciences University who prescribed him Humira and Mesalamine, the latter of which he took three times per day. *Id.* ¶ 5. Dove remained in custody at the Jail for three or four months, during which time he routinely took his medication. *Id.* His ulcerative colitis was well controlled. *Id.*

On December 22, 2022, Dove was transferred to Coffee Creek Correctional Facility ("Coffee Creek"). *Id.* ¶ 6. Defendant State of Oregon, through the Oregon Department of Correctional Facilities ("ODOC"), operates Coffee Creek. *Id.* ¶ 2. When Dove arrived, the intake nurse informed Dove that the facility did not yet have his Mesalamine prescription and needed to order it. *Id.* On December 25, 2022, Dove saw the first signs of blood in his stool. *Id.* ¶ 7. On

---

[2] The Court accepts as true all well-pleaded allegations from the FAC and construes them in the light most favorable to Dove. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d at 1140.

December 27, 2022, Dove went to the medical unit for a physical examination, and he told the nurse that he was internally bleeding. *Id.* ¶ 8. The nurse said that his Mesalamine would arrive soon and that she wanted to start him on Balsalazide. *Id.*

Dove received his Mesalamine, as well as his Balsalazide prescription, on December 29th—one week after he arrived at Coffee Creek. *Id.* ¶ 9. He took one pill of each prescription. *Id.* About an hour later, a nurse came and took the Mesalamine away, saying it was because the Balsalazide was "the same thing." *Id.* On December 31, 2022, Dove told the guard on duty that he needed to talk to emergency medical staff as soon as possible because he was losing a lot of blood due to a colon flair up. The guard called and told the emergency medical staff, but no one came. *Id.* ¶ 10. On January 4, 2023, Dove was called to the doctor's office, where they gave him a Humira infusion and Dove asked for a prednisone taper. *Id.* ¶ 11. The next day, Dove sent a "kyte" (an online message) to the medical staff explaining that he was in "serious agony," was losing a lot of blood, and needed a prednisone taper. *Id.* ¶ 12. On January 7, staff replied and told Dove they would request an appointment for him. *Id.* ¶ 13. Dove tried to talk with emergency medical staff again on January 9 with no success, and stopped taking his Balsalazide on January 11. *Id.* ¶¶ 14-15. Dove sent another kyte on January 12 informing medical staff that he stopped taking the Balsalazide and that he had been "passing blood for 3 weeks" and was "starting to feel the effects of it." *See id.* ¶ 16. He asked staff, "Please see me asap." *Id.*

On January 14, medical staff replied, saying "You are scheduled with provider soon." *Id.* ¶ 17. The same day, Dove sent another kyte, saying: "I have been shitting blood for over 3 weeks straight, I can barely eat, I feel physically exhausted just from walking down the stairs or taking a shower, my body has been sore all day and I haven't done anything. I've lost at least 10 pounds since my last medical visit. I've felt nauseous all day today. Please see me. I'm super pale now

PAGE 4 – ORDER

also." *Id.* ¶ 18. Around January 15, 2023, Dove was having 14 to 15 bowel movements a day and could not eat or sleep because he was on the toilet all night. After a guard called emergency medical staff, medical eventually came to give Dove a prednisone taper. His intestines were so inflamed, however, that the prednisone had no effect. *Id.* ¶ 19.

On January 18, 2023, Dove finally had a visit with his provider. The doctor noticed that Dove was pale and had lost 15 pounds since arriving at Coffee Creek, so Dove went to the emergency room at Legacy Hospital. The hospital took a stool sample, called his GI, and told Dove to continue taking prednisone. Dove returned to Coffee Creek in pain. *Id.* ¶ 20.

Two days later, on January 20, 2023, the doctor at Coffee Creek sent Dove back to the ER where he was admitted. After about 7 days, on January 27, 2023, they realized they could not get his colon in check and told him he would have to have his colon removed. *Id.* ¶ 21. On February 2, 2023, Dove had a total abdominal colectomy with end ileostomy. He now lives with a colostomy bag. Id. ¶ 22.

On February 17, 2023, after returning to CCCF following the February 2 colectomy, Dove filed a grievance (CCIC-2023-02-054) for the complete neglect of his medical care. *Id*. ¶¶ 22-23. The grievance was denied on March 2, 2023. *Id*. ¶ 24. Two weeks after the denial, the Coffee Creek Nurse Manager responded to the grievance with a statement on Dove's past and continuing medical care. *Id*. ¶ 25. On April 6, 2023, Dove appealed the denial of the grievance, stating that the response was not helpful and only included a recitation of his medical records. *Id*. ¶ 26. This appeal was denied on April 17, 2023, and responded to by Warren Roberts on April 25, 2023. *Id*. ¶¶ 27-28. Roberts' response re-stated what was in the previous grievance response. *Id*. ¶ 28. Dove then filed a second appeal which was returned for non-compliance with ODOC rules. *Id*. ¶¶ 29-31. On June 17, 2023, Plaintiff filed a third grievance appeal which was

PAGE 5 – ORDER

denied and responded to by J. Bugher, the Assistant Director of Health Services and the Medical Services Manager. *Id*. ¶¶ 35-36. Bugher expressed support for Roberts' opinion and echoed Roberts' earlier response. *Id*. Bugher also told Dove that he was scheduled for a follow-up appointment with a provider to discuss his future care. *Id.*

At some point on or before July 20, 2023, Dove was moved from Coffee Creek to OSP. *See* ¶ 41. Defendants Linda Bono and Karen Harris are or were nurse practitioners at OSP who provided medical consultation, examination, or treatment to Plaintiff during 2024 and 2025. *Id.* ¶¶ 3-4. Defendant Warren Roberts was the Chief of Medicine for ODOC since approximately December 7, 2020. Defendant Roberts was responsible for final approval or denial of surgical and specialty care. *Id.* ¶ 5. Defendant Michael Seale has been the Chief of Medicine for ODOC since at least February 3, 2025. *Id.* ¶ 6. Defendant Aimee Hughes has been the Health Services Administrator for ODOC since at least March 1, 2021. Defendant Hughes is responsible for leading, directing, and controlling all ODOC health services activities and ensuring their compliance with state and federal laws. *Id.* ¶ 7.

## DISCUSSION

### A. Bono and Harris

Dove has sued Bono and Harris under 42 U.S.C. § 1983, alleging that they violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. *Id.* ¶¶ 50-62. Each has moved to dismiss on the grounds that Dove has made insufficient factual allegations against them to support his Eighth Amendment claim. *See* ECF 4 (Bono) and ECF 11 (Harris).

A prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's ban against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference can be "manifested by prison doctors in their

response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. To prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show both a "serious medical need" and "deliberate indifference" to that need. *Id.* at 104. A serious medical need exists if failure to treat the plaintiff's condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted). A showing of deliberate indifference requires demonstrating both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (quotation marks omitted). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence," but the standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

      Here, Dove plausibly alleges a serious medical need—his ulcerative colitis, if left untreated, could have and did in fact cause significant injury and pain. Dove does not plausibly allege, however, that Bono or Harris acted with deliberate indifference. The only factual allegations that Dove makes against Bono and Harris are that they were nurse practitioners at OSP who gave "medical consultation, examination, and/or treatment" to Dove in 2024 and 2025. All relevant medical decisions in this case appear to have been made in 2022 or 2023. Dove's colectomy occurred in 2023, FAC ¶ 22, and Dove argues that it should have been reversed that same year, *id.* ¶ 43. Dove argues that Bono and Harris knew about his need for a colostomy

reversal, but Dove has failed plausibly to allege as much. Plaintiff does not allege, for example, any facts about when or for what Bono or Harris treated him, or even what they knew about his need for a colostomy reversal. Without these facts, Dove cannot establish that Bono or Harris took any "purposeful acts" or failed to respond to a Dove's pain or medical need. *See Jett*, 439 F.3d at 1096. Dove fails to state a claim against Bono or Harris.

### B.  Roberts[3]

Dove also has sued Roberts for violating his Eighth Amendment rights under § 1983. Roberts has moved to dismiss on three grounds: (1) the FAC contains no allegations that Roberts had personal involvement in Dove's medical care; (2) Dove's supervisory liability theory is insufficiently plead; and (3) Roberts is entitled to qualified immunity. *See* ECF 5. For the same reason as above, Dove has plausibly alleged that he had a serious medical need. The Court agrees with Roberts, however, that the FAC contains insufficient allegations to proceed against him on a theory of personal involvement. Dove even argues in his briefing that Roberts is liable under a theory of supervisory liability. As explained further below, there are insufficient factual allegations to support a theory of supervisory liability.

---

[3] The Court denies Roberts' separate Motion under Rule 12(f) to strike the statement that "Defendant Roberts was . . . fired for misconduct relating to his job duties, including, but not limited to delaying medical care to inmates." FAC ¶ 5. Roberts argues that the allegation is "spurious" because it is irrelevant to Dove's claims and "contains defamatory material." *See* ECF 5 at 11. Whether Roberts had a systemic practice of delaying medical care could be relevant to a supervisory liability claim under § 1983. *See Munoz v. Oregon*, 2025 WL 3187572, at *4-5 (D. Or. Nov. 14, 2025) (discussing how superior's knowledge of subordinates' systemic, improper denial of inmates' medical care could supply basis for § 1983 liability). Additionally, the Court takes judicial notice of other discussions of Roberts' alleged misconduct and termination before the undersigned and in the news. *See id.*; *see also Pierce v. Peters*, 2025 WL 3238262, at *2 n.2 (D. Or. Nov. 19, 2025) (report about same released to *Oregon Public Broadcasting* and *The Oregonian*).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Under either theory, "a plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Id.* (citation omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (cleaned up). The Ninth Circuit has explained, however, that a court should not accept "wholly conclusory" allegations that a supervisor reviewed and approved the plans of the supervisor's reports as supporting that the supervisor knew of resulting allegedly unconstitutional conduct. *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012).

The two well-plead allegations against Roberts[4] are insufficient to establish supervisory liability. Dove alleges that Roberts was the Chief of Medicine and was therefore responsible for final approval or denial of surgical and specialty care, including providing oversight to all

---

[4] *See* FAC ¶¶ 5, 33. Roberts is also mentioned in passing in two allegations about other defendants. *See id.* ¶ 6 (explaining how Defendant Seale took over for Defendant Roberts after he was terminated at ODOC); ¶ 40 ("On July 12, 2023, J. Bugher, the Assistant Director of Health Services, responded to the grievance appeal and reviewed the previous response from Dr. Warren Roberts.").

ODOC health services' medical professionals and providing care to patients at all ODOC facilities. FAC ¶ 5. That allegation, if used to support the assertion that Roberts reviewed and approved Dove's healthcare, is the kind rejected by *Chavez* as "wholly conclusory." *See* 683 F.3d at 1110.

Dove also alleges that, on April 25, 2023, Roberts responded to Dove's first grievance appeal, which means that Roberts learned by that date that Dove underwent the total colectomy surgery. FAC ¶ 28. After Roberts' response, Dove filed two additional grievance appeals to which others responded. *Id.* ¶¶ 29-38. Although Dove states in his response that he "has plead that Defendant Roberts knew of Plaintiff's serious medical condition and need for a colostomy reversal," and "[d]espite this knowledge, [Roberts] failed and refused to provide Plaintiff with the procedure," Dove does not plead facts supporting those assertions. He does not allege, for example, facts supporting the contents of his grievance. *See id.* ¶ 23 ("Plaintiff filed a grievance (CCIC-2023-02-054) after his return to CCCF after a 3-week stay at the hospital for having his colon removed, due to the complete neglect of his medical care."). Drawing all reasonable inferences in Dove's favor, it is plausible that Roberts reviewed the contents of his grievance when he responded to the appeal and therefore learned about Dove's medical complications. Without explaining the contents of that grievance, however, the FAC does not plausibly allege Roberts knew about Dove's need for a colostomy reversal just by expedient of reviewing the grievance. Further, Dove had his total colectomy on February 2, 2023, and filed his grievance on February 17. *Id.* ¶¶ 22-23. Without additional facts, the Court cannot reasonably infer that the grievance appeal contained a complaint for a colostomy reversal, because Dove does not explain

when, why, or how he discovered his need for the reversal procedure.[5] Dove therefore fails to state a claim against Roberts under § 1983.

## C. Qualified Immunity

Harris and Roberts also argue that they are entitled to qualified immunity. Qualified immunity "is an *immunity from suit* rather than a mere defense from liability," and therefore should be evaluated as early as possible. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original); *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (cautioning against "forc[ing] the parties to endure additional burdens of suit . . . when the suit otherwise could be disposed of more readily."). Because the Court finds that all claims against Harris and Roberts are insufficiently plead, however, the Court will not evaluate qualified immunity at this time. *See, e.g.*, *Odom v. Russ*, 2022 WL 772926, at *4 (D. Or. Mar. 10, 2022) ("The Court need not address qualified immunity for claims dismissed on other grounds in this opinion."); *Ryan v. Lopez*, 2014 WL 2201076, at *4 & n.4 (D. Or. May 23, 2014) (dismissing constitutional claim for failure to allege personal involvement and declining to address qualified immunity), *aff'd*, 2015 WL 13929019 (9th Cir. July 29, 2015).

## D. Seale and Hughes

Dove also has sued Seale and Hughes for "injunctive relief in their official capacities." *Id.* ¶ 66; *see also id.* ¶¶ 63-67 ("Third Claim for Relief: Injunctive Relief"). Seale and Hughes have moved to dismiss on the grounds that injunctive relief is a type of remedy, not a separate

---

[5] Nor can the Court, from the current factual allegations, reasonably infer that Roberts refused to provide Dove with the procedure, as Dove argues. The first appeal of the grievance "stat[ed] that the response [to the grievance] wasn't helpful and only included [Dove's] medical records. [Dove] note[d] that the response is not a suitable remedy." FAC ¶ 26. It appears from Dove's allegations that the appeal requested a more helpful response to the grievance. Roberts then responded to Dove's grievance appeal and "re-stated what was in his previous grievance response." *Id.* ¶ 28.

cognizable claim for relief. ECF 11. The Court agrees. *See, e.g.*, *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1236 n.2 (D. Or. 2021) ("Plaintiffs' purported . . . claim for relief, labeled "Injunction," is a remedy and not an independent cause of action."); *E. Side Plating, Inc. v. City of Portland*, 2019 WL 3976507, at *1 (D. Or. Aug. 22, 2019) ("[A]n injunction is a remedy, not a cause of action."); *Chief Aircraft, Inc. v. Grill*, 288 Or. App. 729, 731 n.1 (2017) ("[A]n injunction is a remedy, not a claim, under Oregon law"). Dismissal of a defendant is proper when a plaintiff, in attempting to obtain injunctive relief, fails to plead a separate cause of action against that defendant. *See Vandeventer v. Dale Const. Co.*, 271 Or. 691, 693-94, 697 (1975) (suing mortgage company and construction company for specific performance; affirming dismissal of defendant construction company because "the complaint did not state sufficient facts to constitute a cause of suit" against it). Here, because Dove has not plead any other claims against Seale and Hughes, dismissal is warranted.

Defendants argue that amendment will be futile with respect to Seale and Hughes. Adding Seale and Hughes to the § 1983 claim would be futile, Defendants argue, because there is "no alleged wrongdoing against these defendants," ECF 19 at 4, and because the Oregon Tort Claims Act ("OTCA") would require the State to be substituted as the defendant if Defendants were added to the medical negligence claim, *see* Or. Rev. Stat. § 30.265(3). Although Defendants' argument with respect to the OTCA is well-taken, Dove could allege additional facts against Seale and Hughes with respect to his § 1983 claim (or a different claim) such that amendment would not necessarily be futile.

## CONCLUSION

The Court GRANTS Defendant Bono's motion to dismiss (ECF 4), Defendant Roberts' motion to dismiss (ECF 5), and Defendants Harris, Seale and Hughes' motion to dismiss (ECF 11). The Second and Third Claims for Relief are DISMISSED WITHOUT PREJUDICE. If

Dove believes in good faith that he can cure the deficiencies identified in this Order, he may file a Second Amended Complaint within two weeks from the date of this Order. Defendants' Motion to Stay Discovery (ECF 22) is DENIED AS MOOT.

**IT IS SO ORDERED**.

DATED this 23rd day of February, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 13 – ORDER